11 N.J. Super. 611 (1951)
78 A.2d 846
BEATRICE HARTMAN, PETITIONER-APPELLEE,
v.
FEDERAL SHIPBUILDING AND DRY DOCK COMPANY, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Essex County Court Law Division.
Decided February 15, 1951.
*612 Mr. Morris Edelstein, attorney for petitioner-appellee.
Messrs. Stryker, Tams & Horner (Mr. John J. Monigan, Jr., appearing), attorney for respondent-appellant.
HARTSHORNE, J.C.C.
This case arises on a petition for alleged increased permanent disability to petitioner's back, 15% compensation having been originally paid, an award of *613 50% of total having been made November 1, 1949, the final award of total permanent disability having been made October 25, 1950.
It stands undisputed that petitioner sustained three compensable accidental injuries to her back while in respondent's employ. The first occurred January 18, 1943, the second September 14, 1944, the third January 25, 1945. The doctor upon whom respondent principally relies, found she then had a residual right sacroiliac sprain with a sciatic nerve involvement. He agrees this was "not a normal back."
Nevertheless, petitioner continued in respondent's employ, but "due to my condition, I did light lifting and it got so bad, that they put me near the bench cutting rubber gaskets" with scissors. When in December, 1945, they assigned her to work on ships, she left the employment because she "wasn't equal to that kind of work." Since she previously had been a practical nurse, she turned again to nursing. But, she had been wearing a brace "from the first time that I was injured in the shipyard," i.e., 1943, though at times she "had to take it off because the pad in the back irritated * * *." Her sister Mrs. Kroll adds that since "the very first injury" petitioner "was never able to do heavy work" even around the house, and that she, the sister, had to assist her intermittently in many more ways both then and thereafter, until now when she has become practically an invalid. In May of 1946, while nursing, she had one, or possibly two, similar back difficulties. "The daughter and I were trying to straighten her (the patient) in bed, and I put my arms out to try and help, and this pain shot across my back and I just couldn't do it, and I had to give it up." Q. "You were trying to lift this patient in bed?" A. "I didn't even get near her to lift her." This forced petitioner to give up practical nursing, and she took further medical treatment, being unable to work for some seven months. Thereafter occurred a series of other similar incidents. In December, 1947, when she bent down to the floor to pick up a piece of paper, she again suffered acute back pains, and was put to bed by Dr. Federer with fracture boards and a heating pad, being admitted to the hospital in February *614 of 1948. On February 3, 1949, while acting as a baby's nurse, she had a similar experience simply in removing a milk bottle from a drainboard. Since then her condition has "gotten worse," to such an extent that on May 16, 1949, she suffered another acute back difficulty simply while attempting to arise from a kitchen chair. Note that the occurrence of all these incidents was not wrung from petitioner on cross-examination, but volunteered by her on direct, apparently as showing the extent of the disability resulting from the accidents on which she based her claim.
That petitioner has for some years been suffering from a chronic back, to use the colloquial, is thus evident. That this chronic back is identical, save in its severity, with her original condition, is also admitted by respondent's Dr. Watman. His diagnosis after the first three incidents was "a right sacroiliac sprain and sciatic nerve involvement." Q. "And your diagnosis at the conclusion of your examination in 1950 was a right sacroiliac sprain with sciatic involvement?" A. "Yes, the same." Q. "Exactly the same?" A. "Yes, that's right," though, with added severity and more intense neurological symptoms.
Respondent's doctors unite in their view that the present end result of this serious orthopedic and neurological situation, is due not alone to the back injuries which petitioner suffered while in respondent's employ, but to those which she suffered thereafter, particularly because of the absence of proof of similar incidents for a year or more from the time she left respondent's employ, till the above nursing incident of May, 1946. This claim  in the medical sense  is undoubtedly correct. For each of such later incidents clearly worsened petitioner's back physically, and rendered her more likely to suffer a further injury, even from such normal incidents in life as picking up a piece of paper from the floor, lifting a milk bottle from a drainboard, or getting up from a chair. But the question of legal responsibility for this end result, is totally different from the medical one, of the bodily effect on an end result. The medical profession, interested in treating a body, are concerned solely with the physical and *615 bodily situation giving rise to the bodily result. Note to this effect Dr. Watman's testimony (Record pp. 362, 370). The legal profession on the contrary, interested in the question of legal responsibility, seeks to ascertain the person who causes the ultimate physical result. Hence, the conclusions of the medical men in this cause, that the present condition of petitioner was, in part at least, due to her back injuries after she left respondent's employ, has small bearing on the legal question here involved.
The applicable legal principle is that "If a reasonably prudent person innocently aggravates the harmful effect of the original injury, the original wrongful cause continues to the end, and accomplishes the final result." Selak v. Murray Rubber Co., 8 N.J. Misc. 838 (Sup. Ct. 1930); affirmed, 108 N.J.L. 548 (E. & A. 1932); Randolph v. E.I. duPont de Nemours & Co., 130 N.J.L. 353 (Sup. Ct. 1943). Though "The chain of physical causation with the compensable injury may be broken by the negligence of the employee," or his willful act, as an independent intervening cause. Kelly v. Federal Shipbuilding & Dry Dock Co., 1 N.J. Super. 245 (App. Div. 1949); McDonough v. Sears, Roebuck & Co., 127 N.J.L. 158 (Sup. Ct. 1941).
Applying these principles, it would hardly seem negligent for petitioner, forced to earn her own bread and butter, to turn to her original employment of nursing, when she found her previous injuries rendered her incapable of doing the work on shipboard, to which respondent wanted to assign her. Nor would it seem negligent for her, without lifting a patient bodily, to attempt to aid the patient's daughter, and the patient herself, in changing her position in the bed. A fortiori such incidental daily occurrences as picking a piece of paper from the floor, lifting a milk bottle from a drainboard, or getting up from a chair, can hardly constitute independent intervening causes, sufficient to break the chain of causation running from the original back injuries occurring in respondent's employ.
Nor is there substance to respondent's claim that these compensable accidents are made too remote, by the fact *616 that a year or more elapsed between them and the nursing incident. For petitioner's wearing of a brace, inability to do heavy work, and requiring the aid of her sister, all continued, generally, during this period. Surely these previous accidents are "one of the contributing causes without which the injury which actually followed would not have followed." Newcomb v. Albertson, 85 N.J.L. 435 (Sup. Ct. 1914); Clover, Clayton & Co., Ltd., v. Hughes (1910), A.C. 242; Randolph v. E.I. duPont de Nemours & Co., supra. These subsequent nursing and other incidents, instead of falling into the category of independent intervening causes, such as the act of a patient in burning his own finger with a match despite warnings, as in the McDonough case, supra, would rather seem to be mere manifestations of physical weakness and pain, resulting from the sacroiliac injury suffered while in respondent's employ. Indeed, in view of the admitted identity of locale and type of injury, from beginning to end, it is quite clear petitioner here does not fall within the line of cases of which Brown v. Allied Plumbing & Heating Co., 129 N.J.L. 442 (Sup. Ct. 1943); affirmed, 130 N.J.L. 487 (E. & A. 1943); and Mack v. M & S Maintenance Co., 4 N.J. Super. 251 (App. Div. 1949), are instances. Indeed, "The fact that the second injury was a wholly independent injury, and not merely an aggravation of a compensable injury, makes no difference in the result, if the second injury is directly connected in a chain of physical causation with the compensable injury." Kelly v. Federal Shipbuilding & Dry Dock Co., supra; Flanagan v. Charles E. Green & Son, 122 N.J.L. 424 (E. & A. 1939).
In short then, since the series of accidents to petitioner's back, while in respondent's employ, directly contributed to her later injuries, and such injuries would clearly not have occurred otherwise, respondent must be considered legally responsible for her increased incapacity resulting therefrom. Since respondent's physicians frankly admit petitioner is no malingerer, and there is small question on the facts as to her present total incapacity, the award of the Bureau therefor will be affirmed, and a determination may be entered accordingly.