566 P.2d 293

**MORRISON–KNUDSEN COMPANY, INC. and Argonaut Insurance Company, Petitioners,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Hugo Boone, Halvorson-Lent Transcanyon and State Compensation Fund, Respondents.**

**No. 12802–PR.**

Supreme Court of Arizona, In Banc.

June 6, 1977.

Jennings, Strouss & Salmon by Ronald H. Moore and M. Byron Lewis, Phoenix, for petitioners.

John H. Budd, Jr., Chief Counsel, Industrial Com'n of Arizona, Phoenix, for respondent.

Stevenson, Warden & Smith by Wm. W. Stevenson, Flagstaff, for respondent, Boone.

Robert K. Park, Chief Counsel, State Compensation Fund by J. Victor Stoffa, Phoenix, for respondents, Halvorson-Lent Transcanyon and State Compensation Fund.

STRUCKMEYER, Vice Chief Justice.

This statutory certiorari by the Morrison-Knudsen Company and the Argonaut Insurance Company is to review an award of a new, additional or previously undiscovered disability causally related to an industrial accident occurring in 1971. The Court of Appeals, 27 Ariz.App. 1, 550 P.2d 648 (1976) set aside the Industrial Commission's award. We granted review. Opinion of the Court of Appeals vacated. Award of the Industrial Commission affirmed.

Respondent Boone suffered multiple injuries on April 12, 1966 in a helicopter crash while employed by the Halvorson-Lent Transcanyon Company (Halvorson-Lent). Halvorson-Lent was insured with the State Compensation Fund. On July 25, 1969, the Industrial Commission found that Boone sustained a 15% general disability and awarded him an unscheduled permanent partial disability. The Commission found that Boone's disability was based primarily:

"on a painful wrist due to a dorsal dislocation of the distal ulna, a painful foot due to now united metatarsal fractures and pain about the fracture site of the right clavicle; in addition he has complaints of headaches, deafness in his left ear, and pains with respect to the right ankle, right knee and right lower back."

Boone did not then have a loss in earning capacity.

On December 20, 1971, Boone injured his back while engaged in manual labor in the employ of the Morrison-Knudsen Company. Morrison-Knudsen's insurance carrier, the Argonaut Insurance Company, accepted Boone's claim for compensation. On February 15, 1972, it issued a notice of claim status, paying Boone for loss of time from December 29, 1971 to January 2, 1972, but terminated medical benefits as of January 17, 1972.

On February 7, 1973, Boone petitioned to reopen the claim against Halvorson-Lent and the State Fund based on A.R.S. § 23-1061(H) in order to increase his compensation benefits. The Commission denied Boone's request to reopen but allowed him to amend his petition to allege that his present condition arose from the 1971 injury. After four hearings, the hearing officer ordered that the claim against Morrison-Knudsen and Argonaut based on the 1971 injury be reopened and dismissed the proceedings as to Halvorson-Lent and the State Fund. The hearing officer found that Boone had established a new, additional or previously undiscovered disability as against Morrison-Knudsen. Argonaut was

ordered to pay medical expenses and compensation for total and/or temporary partial disability from February 7, 1973.

Morrison-Knudsen and Argonaut first contend that the testimony before the hearing officer merely constituted new evidence of a continuing and existing condition and did not establish a new, additional or previously undiscovered disability as is required by § 23–1061(H). But we think there is ample evidence to satisfy the statutory grounds for reopening.

At a hearing held on September 26, 1973, Boone testified that after the 1971 injury he felt a pain in his leg different from the pain which had resulted from the 1966 injury. He also testified that this pain continued up to the time of the hearing. Dr. Howard H. Johnston, who examined Boone in respect to both the 1966 and 1971 injuries, testified that the low back complaints began with the 1971 injury but that the condition was aggravated by a shortened leg caused by the 1966 accident and resulting injuries. Other evidence showed that even though Boone was able to work after January of 1972, he was only given light work and that he continued to suffer pain which he described as having begun with the 1971 injury. This evidence is plainly sufficient to support a finding that Boone's condition resulted from the incident of December 20, 1971.

It is, however, urged that the 1966 and 1971 injuries combined to cause Boone's present complaints and that Morrison—Knudsen and Argonaut were prevented from showing this by a ruling of the hearing officer which sustained an objection to a question asking Dr. Johnston if he was able to attribute percentages of disabilities arising out of the two accidents. Dr. Johnston testified:

"Q. Now, in your report of January 14th, 1974, in your comments, you indicated that Mr. Boone's present low back complaint was attributable to the incident that occurred in December of 1971. You also go on to state that his present condition is aggravated by the short right leg.

A. Yes, sir.

Q. Now, are you saying that Mr. Boone's present complaints of physical condition are equally attributable to the 1966 and 1971 injury?

MR. PHILIPS: Objection, leading.

THE HEARING OFFICER: Sustained.

MR. MOORE: Q. What are you saying when you make that statement, Doctor?

A. I have to say, stick with just what I wrote, and that is, I felt his low back complaints began with an incident when he was lifting the frozen earth or blacktop, be that it's aggravated in part by a short leg. I didn't attribute a percentage to the two.

Q. Are you able to attribute percentage to the two causes, Doctor?

MR. PHILIPS: Mr. Hearing Officer, I will object again as irrelevant.

THE HEARING OFFICER: Sustained."

Petitioners urge that "The critical element to which attention must be directed is the causal relationship between the prior industrial injury and the condition complained of at the time of the Petition to Reopen." With this, we agree. They further argue, however, that Dr. Johnston's testimony shows that he was of the opinion that Boone's physical condition was attributable to two concurrent causes, not one, each operating on the other, and that the referee prevented them from developing which of two etiological agents caused Boone's present complaints. They also argue that Boone did not establish what portion of the causative agent was attributable to the 1966 injury and what portion was attributable to the 1971 injury, and that this is a classic case for apportionment rather than the application of the principle that the second injury is responsible for all results. With these arguments, we do not agree.

The cases of multiple injuries in Arizona may be classified in two categories. There are those compensable under A.R.S. § 23–

1044(E), where the Legislature has arbitrarily required apportionment if a claimant has a previous disability such as the loss of one eye, one hand or one foot, or otherwise. It requires that the percentage of disability for a subsequent injury be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the second injury. The statute, § 23–1044(E), speaks only of "disability". It does not refer to aggravation of an existing disability. It has reference to separate disabilities which concur in causing a claimant's total disability.

This was clearly recognized in *Lee Moor Contracting Company v. Industrial Commission*, 61 Ariz. 52, 143 P.2d 888 (1943). There, while the claimant had a pre-existing osteoarthritis which was not at the time of the accident causing disturbance, there was sufficient force to aggravate this condition and stimulate it into an infectuous type of progressive arthritis. We said:

> "In the case at bar, claimant was performing his daily manual labor with no disabling effects from his pre-existing condition up to the time of the accident, but has been disabled since. At the time of the accident he had no disability. True, he had a condition, which was susceptible of becoming a disability when aggravated. *Section 56–957, Arizona Code 1939 [§ 23–1044], does not require the Commission to give effect to such a condition and attempt to apportion the concurring causes.* That section only requires the Commission to take into consideration previous disability. That means an existing disability at the time of the injury,—something that affects his earning power." 61 Ariz. at 58, 143 P.2d at 890. (Emphasis added.)

*See* for typical examples of the application of § 23–1044(E): *All Star Coach, Inc. v. Industrial Commission*, 115 Ariz. 335, 565 P.2d 515 (filed May 23, 1977); *Ross v. Industrial Commission*, 112 Ariz. 253, 540 P.2d 1234 (1975); *Ronquillo v. Industrial Commission, 107 Ariz. 542, 490 P.2d 423 (1971);* *Ossic v. Verde Central Mines*, 46 Ariz. 176, 49 P.2d 396 (1935).

In other cases where there have been two or more causes of injury, the second injury has taken the form of an aggravation of a pre-existing injury. Although the second injury would have been less severe in the absence of the prior injury, the second employer is held to be solely responsible. This is for the reason, as we said in *Murray v. Industrial Commission*, 87 Ariz. 190, 349 P.2d 627 (1960):

> " * * * In the law of torts, it is said that the tortfeasor is not entitled to a perfect specimen upon which to inflict injury. Likewise, in the field of Workmen's Compensation, the employer takes his employee as he is. In legal contemplation, if an injury, operating on an existing bodily condition or predisposition, produces a further injurious result, that result is caused by the injury." 87 Ariz. at 199, 349 P.2d at 633.

And *see Tatman v. Provincial Homes*, 94 Ariz. 165, 382 P.2d 573 (1963); *Mead v. American Smelting & Refining Co.*, 90 Ariz. 32, 363 P.2d 930 (1961); *Revles v. Industrial Commission*, 88 Ariz. 67, 352 P.2d 759 (1960).

The present case fits into neither of the categories. The second injury here was not one of the concurrent causes of two disabilities which, when added to the other, brought about the totality of the disability. Nor is it an aggravation of a prior injury. Here there was an existing condition caused by the first accident which exacerbated the second injury. Because of the claimant's shortened leg, the damage arising out of the second accident was increased. His condition was worse because of the short leg than it otherwise would have been.

There is no rule of law which permits this case to be placed with those of concurring disabilities under § 23–1044(E). Were we to do so, we would arbitrarily impose upon the prior employer a percentage of Boone's present loss of earnings when, in fact, Boone had suffered no loss of earnings because of the short leg, although the condition of his leg resulted from a prior accident. The proximate cause of claimant's present disability was the accident suffered

by him on December 20, 1971 while engaged in manual labor in the employ of the Morrison—Knudsen Company. See, e. g., *Meyer v. Moore*, Okl., 329 P.2d 676 (1958), that an existing condition is a remote cause and not the proximate cause.

*Hardware Mutual Casualty Company v. Industrial Commission*, 23 Ariz.App. 535, 534 P.2d 749 (1975), relied on and quoted extensively by petitioners in support of its argument that there should be apportionment between carriers, is expressly based on the case of *Aluminum Company of America v. Industrial Commission*, 61 Ariz. 520, 152 P.2d 297 (1944). In the Aluminum Company case, the claimant had osteoarthritis of the spine and pelvis which had been aggravated by the accident. Claimant also had Parkinson's Disease. However, all the doctors testified that Parkinson's Disease was *principally* responsible for claimant's present total permanent disability. The referee refused to permit any examination by the Aluminum Company which would establish percentages of the total disability due to each cause—that is, the injury to the osteoarthritic spine and the Parkinson's Disease. The court held that "the referee did exclude relevant and material evidence that had a direct bearing and should have been considered by the Commission".

In *Aluminum Company v. Industrial Commission* the court did not hold that the second sentence of subsec. (d) of § 56–957, ACA 1939 (now A.R.S. § 23–1044(E)) had any application to the decision in the case. There were two reasons why the claimant was unable to work. One was his diseased condition, and the other was his injured back. While the court used the language that:

"* * * the referee did exclude relevant and material evidence that had a direct bearing * * * on the matter of apportioning the disability of the applicant," 61 Ariz. at 532, 152 P.2d at 301, only in a very loose sense can the case be considered one of apportionment. The question was how much the work-caused injury reduced the claimant's earning capacity. Section 56–957(c), ACA 1939, provided then, substantially as the statute A.R.S. § 23–1044(C) does now, that a claimant in "odd lot cases" shall be compensated by fifty-five percent of the difference between his average monthly wages before the accident and the monthly wages he is able to earn thereafter. There is nothing but the above-quoted language of the decision which implies that compensation should have been calculated pursuant to the present subsec. (E) rather than subsec. (C).

Anything inconsistent with this decision to be found in *Hardware Mutual Casualty Company v. Industrial Commission*, 23 Ariz. App. 535, 534 P.2d 749, is expressly overruled.

Award of the Industrial Commission affirmed.

CAMERON, C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.