609 P.2d 1058

**Orville H. O'DONNELL, Petitioner,**

v.

**INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**J. E. Weaver Construction Co., Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 1 CA–IC 1979.**

Court of Appeals of Arizona, Division 1, Department C.

Dec. 28, 1979.

Rehearing Denied March 24, 1980.

Review Denied April 22, 1980.

Charles M. Wilmer, P. C. by Charles M. Wilmer, Phoenix, for petitioner.

James L. Stevenson, Chief Counsel, Industrial Commission of Arizona, Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund by Arthur B. Parsons, Phoenix, for respondent employer and carrier.

## OPINION

JACOBSON, Judge.

We are faced in this review of an award of the Industrial Commission with whether, given the medical causation between a prior scheduled knee injury and a subsequent work-related back injury, the scheduled injury must be considered unscheduled.

The facts are not in dispute and the issue presented is purely legal in resolution. On August 7, 1968, the petitioner, Orville H. O'Donnell, industrially injured his knee while employed by J. E. Weaver Construction Company, which resulted in a scheduled award of 20 percent permanent partial disability to his right leg.

In May, 1973, O'Donnell filed a petition to reopen his claim. Subsequently, reopening was granted, see *O'Donnell v. Industrial Commission*, 23 Ariz.App. 367, 533 P.2d 675 (1975), investigative surgery was performed and on March 29, 1977, the carrier issued a notice of claim status finding O'Donnell's knee condition to be stationary and providing a 28 percent scheduled permanent partial disability to the right leg.

This notice of claim status was timely protested, O'Donnell contending basically that because of a back condition brought about by the disabled knee, the scheduled injury should now be considered unscheduled.

Testimony at the formal hearings conducted in this matter showed that O'Donnell is a cement mason by trade. This occupation required a significant amount of kneeling. However, because his knee condition did not allow him to kneel, O'Donnell compensated by doing his work in a constantly stooped position. He continued to ply his trade in this manner during the years 1974, 1975 and 1976, primarily for two different employers, Del E. Webb Corporation and Mardian Construction Company. O'Donnell ceased working after April, 1977, due to his back problems.

In this regard, the hearing officer found:

"Under the circumstances, when all of the medical and other evidence is considered in its entirety, the Hearing Officer feels that he must accept the testimony of Dr. Pomeroy and Nielson, to the effect that applicant has a back problem which was contributed to or adversely affected by the unusual positions in which the applicant had to work as a cement mason after his knee injury.

\*     \*     \*     \*     \*     \*

". . . [A]s the years went by, the condition of his leg resulted in the applicant working in a manner that created problems elsewhere. But ultimately, it was the *later work* and not merely the condition of the leg that brought on the subsequent back problems." (Emphasis added.)

Notwithstanding these findings, the hearing officer viewed the problem from a legal causation standpoint and stated the issues thusly:

"[I]s the relationship between the applicant's back condition and his original industrial injury such as to require this carrier to provide benefits for the back on a Petition To Reopen, or, has the applicant, within the contemplation of the Workmen's Compensation Act, sustained a new industrial injury or injuries to his back as a result of his subsequent working activity as a cement mason?"

After reviewing the various legal authorities, the hearing officer concluded that legally O'Donnell's later work-related activity which resulted in his back problems had the legal effect of cutting off the causal relationship between the knee and back condition at least insofar as imposing liability for that back injury upon the carrier responsible for the knee injury.

The hearing officer then concluded:

"[T]he Hearing Officer is not finding herein that an impairment of the back resulting from a leg injury cannot be the basis for converting a scheduled injury to an unscheduled one; the Hearing Officer is finding that applicant's back problem is not a liability of the defendant carrier, within the applicable principles of the Act, and if the back condition is not the responsibility of the carrier, it cannot be used to convert this carrier's liability from the scheduled benefits provided to an unscheduled loss of earning capacity disability, even though such disability may ultimately be established in relation to the back alone, as against one or more subsequent employers."

The hearing officer then entered an award based upon a 28 percent scheduled permanent partial disability. O'Donnell has sought review in this court.

O'Donnell's position is simply put: His prior knee injury required him to stoop, this stooping resulted in a back injury; medical testimony established a causal relationship between the knee injury, resulting stooping, and the back injury; the back injury is a new, additional, or previously undiscovered condition which converts the knee injury on reopening to an unscheduled disability.

The carrier's position is equally simply put: The knee injury would not have caused the back condition without the subsequent work-related activity; the work-related activity, in an industrial setting, resulted in a "new" industrially compensable injury and acted as an intervening cause cutting off the causal connection between the knee and the back; thus it has no liability.

In our opinion, the hearing officer in making his award, mixed the causation rules affecting a subsequent injury or aggravation of the primary injury, where the claimant's activity is a relevant factor, with the fact that such activity occurred in a work setting.

■ As to a primary injury, the workman in order to obtain compensation under the law need only show that the injury arose out of and in the course of his employment. A.R.S. § 23–1021. This showing of "in the course of and arising out of" supplies the necessary causal relationship between work activity and injury to give rise to compensation benefits. Therefore, such common law causal concepts as contributory negligence, superseding causes (i. e., fellow servant's negligence) and remote causes are immaterial. *See,* 1 A. Larson, Workmen's Compensation Law, § 2.30 (1978).

■ However, when compensability is to be extended to subsequent injuries or aggravations related in some manner to the primary injury, then the case law requires that such subsequent injuries or aggravations be the "direct and natural result" of the primary injury *and* the claimant's own conduct can be assessed as a superseding or independent cause. *American Smelting & Refining Co. v. Industrial Commission,* 25 Ariz.App. 532, 544 P.2d 1133 (1976); 1 A. Larson, *supra,* § 13.11.

In particular, where the subsequent injury or the aggravation of the primary injury is not due to the natural progression of the primary injury but is the result of the voluntary acts of claimant, then the nature of the claimant's conduct in performing the act becomes material. *See* 1 A. Larson, *supra,* § 13.12, at 3–377.

We realize that in the recent two to one decision of this court in *Allen v. Industrial Commission,* 124 Ariz. 173, 602 P.2d 841 (1979, review denied), this court held that any subsequent injury acting on a primary injury is not compensable when the subsequent injury is the result of the claimant's intentional conduct rather than a medical condition over which he has no control.

However, in our opinion, the weight of authority supports Judge Haire's dissent in *Allen,* wherein he stated:

"Assuming that other prerequisites to compensability are shown, I do not believe that the mere fact that the act was 'intentional' negates compensability. From my reading of the cases involving the question of liability for consequential

injuries in workmen's compensation proceedings, the 'intentional' act which negates compensability is usually an act which was, in itself, highly inappropriate in light of the claimant's knowledge of his condition." At 177, 602 P.2d at 845.

In terms of causation, cases from other jurisdictions support Judge Haire's conclusion: *Johnnie's Produce Co. v. Benedict & Jordon*, 120 So.2d 12 (Fla.1960) ("If a claimant, knowing of certain weaknesses, rashly undertakes activities likely to produce harmful results, the chain of causation is broken by [the] claimant's own negligence." *Id.* at 13.) *Sullivan v. B & A Construction, Inc.*, 307 N.Y. 161, 120 N.E.2d 694 (1954), *rev'g* 282 App.Div. 788, 122 N.Y.S.2d 571 (1953); *Jones v. Huey*, 210 Tenn. 162, 357 S.W.2D 47 (1962).

■ Moreover, merely because the claimant's activity which gives rise to the subsequent injury or aggravation occurs in a work environment, does not necessarily preclude causal compensability flowing from the primary injury. *Hartman v. Federal Shipbuilding & Dry Dock Co.*, 11 N.J.Super. 611, 78 A.2d 846 (1951); *Scott Paper Co. v. Department of Labor and Industries*, 73 Wash.2d 840, 440 P.2d 818 (1968).

■ We therefore hold, in determining the causal relationship of a subsequent injury or aggravation to a primary injury where the claimant's activity is a factor in bringing about the subsequent injury or aggravation, such activity shall not be considered to break the chain of causation, unless the activity under all of the circumstances is unreasonable in light of the claimant's knowledge of his previous condition.

The carrier argues however, that where the subsequent activity occurs in an industrial setting, and the primary injury has not resulted in an earning capacity disability, then the primary injury is a "remote" cause and as such will not support liability on the carrier of the primary injury. In support of this argument, the carrier cites *Morrison-Knudsen Co. v. Industrial Commission*, 115 Ariz. 492, 566 P.2d 293 (1977) and *Continen-*

*tal Casualty Co. v. Industrial Commission*, 122 Ariz. 357, 595 P.2d 35 (1979), and in particular relies on that portion of *Continental Casualty Co.* which states:

"The decision in *Morrison-Knudsen* was predicated on the fact that the claimant was able to hold down his job in spite of a disability. The first injury was therefore a remote cause of his loss of earnings." 122 Ariz. at 359, 595 P.2d at 37.

We do not believe *Morrison-Knudsen* is applicable to this legal analysis. *Morrison-Knudsen* was dealing with earning capacity apportionment between two already causally established awards—one for a prior unscheduled injury resulting in a shortened leg and one for a subsequent unscheduled back injury. It was the position of the carrier for the back injury that the shortened leg made the back injury worse than it would have been and therefore the carrier for the leg injury should have part of the responsibility for the claimant's present loss of earning capacity. The supreme court correctly rejected that contention after citing those cases which support the proposition that a subsequent employer takes his employee as he finds him, including the results of prior industrial injuries and then noted:

"Were we to do so [allow proportionment] we would arbitrarily impose upon the prior employer a percentage of Boone's present loss of earnings when, in fact, Boone had suffered no loss of earnings because of the short leg, although the condition of his leg resulted from a prior accident." 115 Ariz. at 495, 566 P.2d at 296.

Thus, from an *earning capacity* standpoint, the prior injury was a "remote" cause which would not allow the carrier for the last injury to seek apportionment. This is explained by *Continental Casualty* where the supreme court emphasizes that in *Morrison-Knudsen* "[t]he first injury was therefore a remote cause of his *loss of earnings.*" 122 Ariz. at 359, 595 P.2d at 37. (Emphasis added.)

However, there is nothing in *Morrison-Knudsen* or *Continental Casualty* which

would indicate that if the claimant had been able to establish a causal connection between his shortened leg and his back condition, that responsibility for the back condition could not be imposed upon the carrier which was responsible for the shortened leg simply because the back injury occurred from work activity.

From what we have stated, the hearing officer erred when he held that the subsequent work activity, as a matter of law, broke the chain of causation. This issue can only be resolved on the factual determination of the reasonableness of the subsequent work activity in light of O'Donnell's knowledge of his previous limiting physical condition.

 Also, from what we have stated so far, it is apparent that where the subsequent activity giving rise to a subsequent injury or aggravation related to the primary injury is work related, the claimant may well have two avenues open to him—a reopening of the primary injury or a new claim based upon the work-related activity. Many factors may weigh in the choice of which avenue to trod, including the proof associated with reasonable conduct on reopening, the proof necessary, especially in gradual injury cases, for a new claim, the timeliness of a new claim, and in an inflationary period, the incentive of an increase in average monthly wage usually associated with the last employment. Be that as it may, the initial choice of how a claimant wishes to proceed, by seeking a reopening, by seeking a new injury status, or both, is primarily the responsibility of the claimant, not the hearing officer. And although the hearing officer may conclude that the facts before him would justify a new claim injury being filed, this alone does not authorize him to deny compensability for a reopening and thus substitute his judgment as to the appropriate remedy for that of the claimant.

We hasten to add at this point that under the circumstances presented in this case, the successful reopening claimant may well preclude himself from additional relief. As stated in *Scott v. L. E. Dixon Co.*, 42 Ariz.

525, 529, 27 P.2d 1109, 1111 (1934): "The employee cannot have his cake and eat it too." He very well may be entitled to compensation benefits, but he is not entitled to dual carrier responsibility for the same present physical condition.

For the reasons herein stated, the award is set aside.

HAIRE, P. J., and CONTRERAS, J., concur.