613 P.2d 860

**SALT RIVER PROJECT, Petitioner Self-Insured Employer,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Donald M. Reeves, Respondent Employee,**

**State Compensation Fund, Respondent Carrier.**

**No. 1 CA–IC 2248.**

Court of Appeals of Arizona, Division 1, Department C.

July 1, 1980.

Jennings, Strouss & Salmon by Steven C. Lester, Phoenix, for petitioner.

Calvin Harris, Chief Counsel The Industrial Commission of Arizona, Phoenix, for respondent.

Donald J. Morgan, Phoenix, for respondent employee.

Robert K. Park, Chief Counsel, State Compensation Fund by J. Terence Fox and John A. Flood, Phoenix, for respondent carrier.

## OPINION

JACOBSON, Judge.

This petition for review of an award of the Industrial Commission raises the problem of assessing the industrial responsibility for a reopening where the medical testimony indicates that the claimant's present condition is causally the combination of two different industrial injuries which are the responsibility of two different carriers.

The respondent workman, Donald M. Reeves, has been continuously employed as a lineman by the petitioner, Salt River Project (SRP), for over 21 years. In 1965, Reeves, as the result of a fall from a power pole, sustained an injury to his back at the L4–5 level. Reeves' industrial claim was accepted for benefits by the State Compensation Fund, at that time the industrial liability carrier for SRP. This claim was subsequently closed with no permanent disability.

Reeves continued to work for SRP as a lineman foreman with mild symptoms of back pain until 1977. On August 24, 1977, Reeves sustained another industrial injury when he twisted his lower back while dipping water from a lake, preparatory to installing a transformer. At this time, SRP had become a self-insurer for workmen's compensation purposes. Again, this claim was accepted for benefits and subsequently closed with no permanent disability.

Following closure of the 1977 injury claim, Reeves' symptoms of back pain increased and in May and June of 1978, he sought medical advice from Dr. George L. Hoffmann, Dr. W. Ransom Kelley, Dr. Dennis L. Armstrong and Dr. B. Anthony Dvorak. The general consensus of these doctors was that Reeves was at that time suffering from a herniated intervertebral disc on the left at the L4–5 level.

On June 1, 1978, Reeves filed a petition to reopen the August 24, 1977 industrial injury which was followed by a notice of claim status denying the petition to reopen.

Reeves, on July 13, 1978, filed a timely request for hearing directed to the denial of the petition to reopen the 1977 injury. On the same date, Reeves also filed a petition to reopen the 1965 industrial injury claim. This was subsequently denied by a notice of claim status issued by the State Compensation Fund. A timely request for hearing was directed to this denial and subsequently both reopening petitions were consolidated for hearing.

In the meantime and before hearings were held in this matter, Reeves underwent surgery by Dr. James S. Volkel which revealed a herniated disc at the L4–5 level as well as hypertrophic spurring.

At the hearings held in this matter, the issue presented was whether Reeves' herniated disc was a new, additional or previously undiscovered condition causally related to either the 1977 or the 1965 industrial injuries.

The hearing officer resolved these issues by determining that the herniation was a new, additional or previously undiscovered condition (without designating which), and that it was causally related to the 1977 industrial injury and therefore allowed reopening of that claim. By the same award he denied reopening of the 1965 industrial injury. Only SRP has sought review of that award. However, as stated by SRP in its opening brief:

Although Salt River Project . . . [has] filed a Petition for a Special Action in regard to the Findings and Award of March 30, 1979, they wish to make it clear that they are not protesting that portion of the Award wherein the Hearing Officer denied the claimant's Petition to Reopen the January 19, 1965 industrial injury.

Therefore Salt River Project . . . [is] not contending that the Hearing Officer should have reopened the January 19, 1965 injury as opposed to the August 24, 1977 industrial injury.

Brief for Petitioner at 18.

Since Reeves has not sought by cross petition to question the validity of the denial of the petition to reopen the 1965 injury and based upon the foregoing disavowal by SRP, the respondent State Compensation Fund's appearance before this court has been perfunctory, contending only that as a matter of law under these circumstances this court must affirm that portion of the award denying the reopening of the 1965 claim.

SRP has raised only three issues before this court:

1. Whether the medical testimony as to causation is couched in terms of possibilities and therefore is unable to support an award;

2. Whether the hearing officer's resolution of the medical testimony is legally sufficient to support an award; and

3. Whether the medical testimony which supports a causal connection is foundationally sufficient to be relied upon.

These issues require a review of the medical evidence presented at the various hearings. While several doctors testified before the hearing officer, only Drs. Volkel and Armstrong gave the crucial causal connection opinions which are attacked here.

Dr. Armstrong's testimony on this point was:

Q. Could you with reasonable medical certainty or probability cite one or more of these traumas, such as the '65 fall off the pole or the water bucket episode of '77 or the final falling in the ditch in November of '78, as the cause of his having to be operated on and lose time from work?

[objection overruled]

A. I think it was all an accumulation of episodes which began in '65 when he fell from the pole. . 527 . [A]nd he has continued to have episodic symptoms at that level since that time.

Q. All right. In other words, all three of these episodes or even other traumas might have had a part to play in causing his condition?

A. That is my opinion; that's correct.

Dr. Volkel described the repeated injury process in explaining the bony spurs found on Mr. Reeves' spine at the time of surgery:

Q. . . . We already talked about the spurs. Is there any method of establishing what brought about or when the herniated disc was brought about?

A. Well, if you assume that the spurs were the result of the herniated disc initially, then the spurs could have been produced as the build-up of the '77 or '65 incidents, or for that matter, if he had previous injuries even before that.

\* \* \* \* \* \*

The discs can rupture sort of by degrees. You might have a certain amount of rupturing with an injury. It stays there. It calcifies partially. You have another injury. It ruptures further, gets more calcification, and finally have a spinal injury which precipitates operative intervention.

Based upon this analysis, Dr. Volkel further testified:

Q. Would it be more likely or probable that a series of traumas such as the '65 and '77 incidents and finally the fall in the ditch in '78 all contributed?

A. No question. I don't think there is any question about that. I think all of these things contributed.

Q. Each and all of them bore its part?

A. Bore a part, yes.

Q. A part?

A. Yes.

Q. And a cause?

A. A cause.

Q. Not necessarily the final cause?

A. Correct.

■ SRP first argues that this medical evidence is couched in terms of possibilities

rather than probabilities and therefore is incapable of supporting an award allowing reopening. We disagree. Both Drs. Armstrong and Volkel were of the opinion to a degree of medical probability that Reeves' condition which required medical intervention was the result of continuing traumas to his back and more particularly the industrial incidents of 1965 and 1977.

■ This, upon analysis, appears to be at the heart of SRP's contention here—that the hearing officer characterized Dr. Volkel's testimony to be that the herniation requiring surgery was causally related to "either the 1965 or the 1977 episode," and that the hearing officer failed to resolve this causal dilemma and fix financial responsibility accordingly. Thus, SRP contends that the hearing officer's factual finding that either the 1965 injury or the 1977 injury caused the surgical intervention will not support a determination that this surgery is causally related to the 1977 injury. In our opinion, the hearing officer's characterization of Dr. Volkel's testimony is not supported by the record. It appears to us, under Dr. Volkel's "rupture sort of by degrees" theory, that what the doctor is saying is that continued injuries to the spine work one upon the other causing additional protruding until a point is reached where surgical intervention is warranted. This is not an "either or" situation but rather a combining process, each injury causing additional problems resulting in ultimate surgery. This opinion is supported both by the numerous x-rays taken of Reeves beginning in 1965, showing a continued narrowing of the L4–5 interspace, and Dr. Armstrong's opinion that surgical intervention was a result of an "accumulation of episodes."

■ This factual mischaracterization however does not mean that this award must be set aside. Hearing officers, like superior court judges, should be affirmed if they reach the right legal result, even though for the wrong reason. *Phelps Dodge Corp., Morenci Branch v. Industrial Commission*, 90 Ariz. 379, 368 P.2d 450 (1962); *see Chavez v. Tolleson Elementary*

*School Dist.*, 122 Ariz. 472, 595 P.2d 1017 (App.1979).

■ We now know under *Morrison-Knudsen Co. v. Industrial Commission*, 115 Ariz. 492, 566 P.2d 293 (1977) that apportionment between two carriers for a single disability cannot occur if the original injury did not result in an earning capacity disability. We further know that the employer takes the employee as he is, and that where a second injury operates under an existing bodily condition or predisposition and produces a further physical injury, the resulting disability is "caused" by the second injury. *Continental Casualty Co. v. Industrial Commission*, 104 Ariz. 499, 455 P.2d 977 (1969); *also see Lumbermen's Mutual Casualty Co. v. Industrial Commission*, 118 Ariz. 92, 574 P.2d 1311 (App.1977).

To this last bit of knowledge we need only substitute the word "carrier" for the word "employer" to justify the legal result reached by the hearing officer, that is, that Reeves' present condition is the sole financial responsibility of SRP as a carrier at the time of the last injury and that the State Fund as carrier for the first injury has no liability by way of apportionment or otherwise.

The only fly in the ointment of this legal reasoning is the supreme court's decision in *Continental Casualty Co. v. Industrial Commission*, 122 Ariz. 357, 595 P.2d 35 (1979), which would appear to present an apportionment issue as between SRP and the State Fund. However, since no party here argues the liability of the State Fund, we do not feel called upon to discuss this issue.

■ SRP's final contention is that the testimony of both Drs. Armstrong and Volkel is not probative as it lacks a comparative medical foundation and thus the hearing officer was not justified in finding that Reeves' condition was "new" as required for a reopening under A.R.S. § 23–1061(H).

In our opinion, this comparative evidence was supplied by the stipulation that Dr. Kaplan would testify that as of December 29, 1977, Mr. Reeves did not have a herniated disk. Since Dr. Volkel found such a

herniation in 1978, it was obviously new, the only issue being its causal relationship to the prior industrial injuries which has previously been touched on.

Finally, the State Fund has argued that since no one here is questioning the propriety of that portion of this consolidated award which denied reopening of the injury for which it is financially responsible, that award as to it is *res judicata.* Since we affirm this award, the issue of whether the award in favor of the State Fund should be given *res judicata* effect is rendered moot. We therefore do not reach this issue.

Award affirmed.

CONTRERAS, P. J., and OGG, C. J., concur.