711 P.2d 1247

Thomas **VISHINSKAS,**
Petitioner Employee,

v.

The **INDUSTRIAL COMMISSION OF ARIZONA,** Respondent,

Cam Am Corporation,
Respondent Employer,

Argonaut Insurance Company,
Respondent Carrier,

National Union Fire Insurance Company of Pittsburgh,
Respondent Carrier.

No. 1 CA-IC 3280.

Court of Appeals of Arizona,
Division 1, Department B.

Dec. 24, 1985.

Gilbert Gonzalez, Tucson, for petitioner employee.

Dennis P. Kavanaugh, Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent.

Bury, Moeller & Humphrey by J. Michael Moeller, Tucson, for respondent Employer and respondent carrier Argonaut Ins. Co.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Larry L. Smith and David W. Earl, Phoenix, for respondent Carrier Nat. Union Fire Ins. Co. of Pittsburgh.

## OPINION

CONTRERAS, Presiding Judge.

This is a special action review of a consolidated Industrial Commission award denying reopening of a 1981 claim but granting compensability of a 1983 claim. The issue on review is whether reopening *as well as* the compensability of the new injury claim should have been granted to avoid precluding subsequent reopening if the new injury proves to be merely a temporary aggravation of a previously undiscovered condition. Because the successive injury doctrine applies and application of this doctrine will not preclude reopening if the aggravation is temporary, we affirm the award.

The petitioner employee (claimant) first injured his low back in 1978 in an out-of-state industrial injury. His symptoms included radiating leg pain but no neurological changes. Although he was temporarily disabled for several months, the claimant responded to conservative care. After being discharged without permanent residuals, he returned to work without additional symptoms.

In September 1981, while working for the respondent employer when the respondent Argonaut Insurance Company (Argonaut) was at risk, the claimant acutely strained his low back. Although he again had radiating leg pain and his treating physician *suspected* a disk injury, this diagnosis was not objectively confirmed. After conservative treatment, the claimant was released in December 1981 without permanent impairment. Argonaut then closed the claim without protest from the claimant.

The claimant returned to his regular light duty job without difficulty. But when he occasionally performed heavier work, he had low back pain *without* radiating leg pain. He treated these symptoms himself. Even when he needed medical care for unrelated injuries, he never mentioned the recurring low back pain.

The claimant did especially heavy work for the same employer from May 28 to June 1, 1983, when the respondent National Union Fire Insurance Company of Pittsburgh (National Union) was at risk. By the last day, he had severe low back pain *with* radiating leg pain. He was unable to finish work and needed medical treatment for his back. Because of these symptoms, the claimant filed a new injury claim. National Union denied it. The claimant protested the denial and also petitioned to reopen the 1981 claim. Argonaut denied this petition. The claimant protested this denial as well. The two claims were then consolidated for hearing and disposition.

Each carrier then scheduled an independent medical examination. Warren D. Eddy, M.D., who examined the claimant for National Union, found diffuse degenerative joint disease but no evidence of a disk injury. He concluded that the 1981 injury had permanently aggravated this degenerative condition but that the 1983 episode was merely a flare-up of symptoms related to this aggravation. In his opinion, the 1981 injury and resulting "increment of degenerative joint disease" rated a 10% permanent impairment.

Drs. John P. Utz and J. Wright Cortner, who examined the claimant for Argonaut, found both the degenerative condition and objective evidence of a disk injury, including a depressed left ankle jerk. They also concluded that the claimant had a 10% permanent impairment related to the 1981 injury but did not specify its nature.

At the hearings, four medical experts appeared: Dr. Eddy, Dr. Cortner, Dr. Ram R. Krishna, claimant's treating orthopedic

surgeon, and B.H. Harvey, D.O., claimant's treating chiropractor. Drs. Eddy, Krishna, and Harvey agreed that the 1983 episode exacerbated the symptoms of the 1981 injury and the underlying degenerative condition but did not worsen the underlying condition itself. Dr. Eddy also testified that this degeneration had worsened since the 1981 claim was closed and that the 1981 injury in part caused the additional degeneration. He confirmed his earlier opinion that this aggravated degenerative condition rated a 10% permanent impairment.

In contrast, Dr. Cortner testified that the claimant probably had a bulging or herniated disk. In his opinion, the claimant's condition had worsened since 1981 and the heavy work in 1983 contributed to this worsening. He also testified, however, that both the 1978 and 1981 injuries had probably damaged the disk as well. He considered the 1981 disk injury to be previously undiscovered.

The administrative law judge resolved this medical conflict by accepting Dr. Cortner's opinion. He concluded that this opinion supported a new injury claim but not a reopening:

14. The medical evidence in this case is not a model of clarity, if only because of the artful examinations and cross-examinations by apparently tireless counsel. Basically, the testimony and reports of Doctors Krishna, Harvey and Eddy establish that the 1983 heavy labor episodes caused a symptomatic aggravation of a pre-existing back condition, but no change in that condition. As such, the 1983 episodes would not constitute a new injury ... but may warrant reopening of the September 1981 injury claim.... Dr. Cortner's testimony and report, however, establish that the 1983 heavy labor episodes actually caused a worsening of a pre-existing lumbosacral disc condition and not merely a symptomatic flare-up of that condition. As such, the 1983 heavy labor episodes would be a "new injury" within the meaning of Arizona law and

should not result in reopening of the September 1981 injury claim....

\* \* \* \* \* \*

16. The applicant has not established a new, additional or previously undiscovered condition or disability related to his September 1981 injury. His Petition to Reopen that September 1981 injury claim must be denied pursuant to *Morrison-Knudsen Co., Inc., v. Industrial Commission, supra.*

17. The applicant has established by a preponderance of credible evidence and through the adopted testimony of Dr. Cortner that he suffered a "new injury", a compensable low back condition arising out of and in the course of his employment for the defendant employer on May 28, 1983, May 29, 1983 and June 1, 1983. He is therefore entitled to temporary total and/or temporary partial disability benefits, as well as medical, surgical and/or hospital benefits, to the extent provided by law, from June 1, 1983 until such time as his condition related to this injury is medically stationary.

After affirmance on administrative review, this special action followed.

On review, all parties agree that Dr. Cortner's opinion supports the compensability of the new injury claim. National Union consequently concedes its responsibility to pay compensation for the new injury. This includes medical benefits and temporary compensation until the new injury becomes stationary and, if the new injury permanently aggravated the existing disk condition, permanent disability and any necessary supportive care.

The claimant and National Union, however, assert that Dr. Cortner's opinion also supports reopening of the 1981 claim. Furthermore, they assert that despite National Union's concession of responsibility, denial of reopening is prejudicial because even if the new injury proves to be merely a temporary aggravation and the previously undiscovered condition proves to be a permanent impairment, subsequent reopening will be precluded.

█ A considerable portion of Argonaut's answer fails to respond directly to this argument. Instead, Argonaut first argues that the administrative law judge reasonably resolved the medical conflict. But the claimant and National Union do not dispute this resolution. To the contrary, they accept it and rely on Dr. Cortner's testimony as support for both the reopening petition and the new injury claim. Second, Argonaut argues that the claimant failed to prove that the 1981 injury caused a permanent impairment. Although Dr. Cortner concluded in his report that the 1981 injury rated a 10% permanent impairment, his testimony is silent on the impairment rating. He did, however, testify that the 1981 accident injured the disk and that this injury was previously undiscovered. It therefore was unnecessary for Dr. Cortner to establish a permanent impairment rating at this stage. The evidence of a previously undiscovered condition itself satisfies the legal standard for reopening. *See, e.g., Garrote v. Industrial Commission,* 121 Ariz. 223, 589 P.2d 466 (App.1978). Third, Argonaut argues that none of the authorities cited permits both a reopening and a new injury claim. But neither the claimant nor National Union suggest that the cited authority is controlling.[1] Rather, they rely on the cited cases to illustrate the use of procedural ingenuity to achieve substantial justice, and assert that an analogous ingenuity would allow both a petition to reopen and a new injury claim in this case so as to achieve substantial justice.

Argonaut also argues that well-established successive injury principles support the award. *See generally Morrison-Knudsen Co., Inc. v. Industrial Commission,* 115 Ariz. 492, 566 P.2d 293 (1977); *Professional Furniture Service v. Industrial Commission,* 133 Ariz. 206, 650 P.2d 508 (App.1982) (citing *Morrison-Knudsen).* This argument does directly respond to the assertion by claimant and National Union that it is the application of this successive injury doctrine to the present case that produces the prejudice. National Union in particular relies on two recent reopening cases to support this assertion. *See Dutton v. Industrial Commission,* 140 Ariz. 448, 682 P.2d 453 (App.1984); *O'Donnell v. Industrial Commission,* 125 Ariz. 358, 609 P.2d 1058 (App.1980). National Union goes so far as to argue that these cases are inconsistent with successive injury principles.

This court has recently analyzed these reopening cases and the successive injury doctrine. *See Pearce Development v. Industrial Commission,* 147 Ariz. 598, 712 P.2d 445 (App.1985), *approved and adopted,* 147 Ariz. 582, 712 P.2d 429 (1985). We need not repeat the full discussion here. *Pearce* demonstrated that *Dutton* was not a successive injury case at all because the last injury was nonindustrial. *See id.* at 602–603, 712 P.2d at 449–450. *Pearce* also demonstrated that *O'Donnell* was an exceptional case permitting *alternative but exclusive* remedies because the prior injury made the subsequent activity injurious. *Id.* at 601–602, 712 P.2d at 448–449. Therefore, neither *Dutton* nor *O'Donnell* conflicts with fundamental successive injury principles. *See id.* at —— – ——, 712 P.2d at 449–451.

█ The foregoing analysis effectively rebuts the argument of claimant and National Union. It is not, as Argonaut asserts, that the evidence cannot satisfy both the legal standard for reopening and the standard for a new injury claim. To the contrary, the successive injury doctrine applies only if the evidence does satisfy both standards. This doctrine is a rule of nonapportionment which, as between potentially liable parties, imposes full liability on the one responsible for the last industrial

---

1. The most important of this authority includes *Continental Casualty Co. v. Industrial Commission,* 122 Ariz. 357, 595 P.2d 35 (1979); *All Star Coach, Inc. v. Industrial Commission,* 115 Ariz. 335, 565 P.2d 515 (1977); *Salt River Project v. Industrial Commission,* 126 Ariz. 196, 613 P.2d 860 (App.1980); *Culver v. Industrial Commission,* 23 Ariz.App. 540, 534 P.2d 754 (1975); and *Lockhart v. Industrial Commission,* 15 Ariz.App. 209, 487 P.2d 430 (1971).

injury. *Id.* at 602–603, 712 P.2d at 449–450 (quoting 4 A. Larson, *Workmen's Compensation* § 95.12 at 17–111 to –112 (1984)). Application of the successive injury doctrine therefore does not imply that the legal standard for reopening is unsatisfied.

■ Yet this is just the inference that the claimant and National Union draw. They confuse an application of the successive injury doctrine with a denial *on its merits* of the reopening. If the successive injury doctrine is properly understood as a rule of liability preference, the possibility of preclusion that concerns the claimant and National Union does not arise. Preclusion based on *Phoenix Cotton Pickery* requires a denial *on the merits* of the prior attempt to reopen. *See Phoenix Cotton Pickery v. Industrial Commission*, 120 Ariz. 137, 138–39, 584 P.2d 601, 602–03 (App.1978). No denial of reopening on the merits has occurred in this case. Therefore, reopening will not be precluded if the new injury proves to be merely a temporary aggravation of the previously undiscovered 1981 disk injury.[2]

The finding denying reopening relies on the successive injury doctrine. As such, the award is correct. This is a standard successive injury case unlike *Dutton* and *O'Donnell*. In the present case, the 1983 injury was industrial and the 1981 injury at most predisposed the claimant to further injury.

· Award affirmed.

MEYERSON and FROEB, JJ., concur.

---

**2.** Preclusion of course applies to the extent that the administrative law judge resolved the medical conflict and found a new injury occurred. This determination cannot be relitigated.