824 P.2d 750

**Fred ESPINOSA, Petitioner Employee,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Fry's Food Stores of Arizona and Strata Construction, Respondent Employers,**

**Fry's Food Stores of Arizona (Self–Insured) and Aetna Casualty & Surety Company, Respondent Carriers.**

**No. 1 CA–IC 90–083.**

Court of Appeals of Arizona, Division 1, Department B.

July 9, 1991.

Review Denied March 3, 1992.

Ely, Bettini & Ulman by Ellen E. Hendrickson, Phoenix, for petitioner employee.

Anita R. Valainis, Chief Counsel, The Industrial Com'n of Arizona, Phoenix, for respondent.

Joseph L. Moore, Ltd. by Joseph L. Moore and Julie Doherty, Phoenix, for respondent Employer and respondent Carrier Fry's Food Stores.

Jones, Skelton & Hochuli by Calvin Harris, Phoenix, for respondent employer Strata Const. and respondent Insurance Carrier Aetna Cas. & Sur. Co.

OPINION

BROOKS, Judge.

This is a special action review of a consolidated Arizona Industrial Commission award granting a new injury claim but denying reopening of a prior claim. The issue on review is whether the administrative law judge erroneously denied reopening when the evidence satisfied the legal test for reopening and established that the average monthly wage for the first claim exceeded the average monthly wage for the second claim. We conclude that the successive injury doctrine was correctly applied and therefore affirm the award.

## FACTS AND PROCEDURAL HISTORY

Petitioner employee (claimant) first injured his lower back in March of 1984 while working for respondent employer Strata as a carpenter. Strata's compensation carrier, Aetna, accepted compensability. Claimant's average monthly wage was established at the then applicable statutory maximum of $1,325.00. *See generally,* A.R.S. § 23–1041(E) (1983 and Supp.1990).

On January 10, 1985, claimant's treating chiropractor notified Aetna that he had discharged claimant without permanent impairment on December 26, 1984. Relying on this report, Aetna terminated the claim. Claimant, who was represented by his current counsel, protested this termination. In May of 1985, he began treatment with another chiropractor, Gary R. Stoddard, D.C. However, at the scheduled hearing in July of 1985, he withdrew his protest and allowed the termination to become final.[1]

Despite persistent lower back pain and occasional lower extremity numbness, claimant returned to regular work for Strata and other employers. Because of his symptoms, he routinely saw Dr. Stoddard for chiropractic treatment. In February of 1986, he began working for the self-insured Fry's Food Stores. He also did construction work at times, but by September of 1986, Dr. Stoddard had restricted him from

---

1. The record does not reflect whether or not this withdrawal was a condition of an unapproved settlement.

performing any further construction work because of his ongoing symptoms.

On October 1, 1986, while crouching and tipping a bucket of water as a maintenance worker for Fry's, claimant felt sharp lower back pain. Although he completed his shift, he later had such severe pain that he saw Dr. Stoddard twice that same day. He provided Dr. Stoddard with a history of the bucket incident, and the doctor noted dramatically worsened symptoms. When claimant failed to respond to additional chiropractic treatment, Dr. Stoddard referred him to a surgeon, Gene David Prendergast, D.O., who first examined him on October 14, 1986. Dr. Prendergast ultimately diagnosed a herniated disc and performed surgery in January of 1987.

Meanwhile, claimant had filed a petition to reopen the March 1984 claim. Aetna denied reopening, and its counsel subsequently notified the administrative law judge that it would assert a new injury defense. Claimant responded by filing a new injury claim, and his counsel requested that the two claims be consolidated. Fry's denied the new injury claim, claimant protested both denials, and the requested consolidation was granted.

Hearings ensued at which Drs. Stoddard and Prendergast and two independent consultants appeared. Dr. Stoddard testified that the 1984 injury predisposed claimant to further injury and that the 1986 injury worsened his condition to the point that it required more drastic treatment. Dr. Prendergast testified that either of the injuries could have caused the herniated disc and that both probably contributed to it. However, he could not say that the first injury alone had probably caused it. One of the independent consultants testified that the first injury predisposed claimant to herniation and that the second injury precipitated it. The other testified that he could not express an opinion about probable causation.

After reviewing this evidence, the administrative law judge determined that the legal test for reopening had been satisfied. For this reason alone, he concluded that the legal test for a new injury had not been satisfied. He accordingly issued an award granting reopening but denying the new injury claim.

On appellate review, Strata and Aetna argued that the administrative law judge had misapplied the successive injury doctrine by deciding that the evidence did not satisfy the legal test for a new injury merely because it satisfied the legal test for reopening. Claimant defended the award, arguing that the administrative law judge had determined that the evidence was insufficient for a new injury claim. Fry's also defended the award. It conceded that the administrative law judge's reasoning was erroneous. However, it argued that the award should be affirmed because the successive injury doctrine was inapplicable when reopening provided the claimant with a more beneficial remedy.

This court set aside the award. *See Strata Const. v. Industrial Comm'n,* 1 CA–IC 88–013 (Ariz.App. Dec. 15, 1988) (memorandum decision). We agreed with Strata and Aetna that the administrative law judge had denied the new injury claim for an invalid reason. We explained that the reopening and new injury remedies were alternative rather than contradictory forms of relief. We further explained that the remedies were nevertheless exclusive in that a claimant was prohibited from recovering twice for the same injury. After confirming that recent cases permitted a claimant to elect to reopen by simply failing to pursue a new injury claim, we stated that "[n]o case ... has held that a claimant may pursue both alternatives before the Industrial Commission and at the same time exercise a preference for one of them. In such a consolidated case, the successive injury doctrine remains the rule of decision." *Id.* at 6–7.

We noted that although claimant had suggested below that he could exercise an option to reopen despite consolidation, he had not urged this theory on review. Consequently, we did not reach this question. However, we did address Fry's argument that the successive injury doctrine did not apply if reopening was a more beneficial remedy. We rejected Fry's assertion that

the doctrine only applied if the average monthly wage at the time of the second injury exceeded the average monthly wage at the time of the first. We also observed that the record on review failed to demonstrate a reduced average monthly wage at the time that claimant suffered the new injury.[2]

After we denied reconsideration and the supreme court denied review,[3] the claims were returned to the Industrial Commission for a *de novo* hearing. *See, e.g., Dancing Sunshines Lounge v. Industrial Comm'n,* 149 Ariz. 480, 720 P.2d 81 (1986). Pending formal hearings, claimant moved to sever the consolidated claims. The administrative law judge denied this motion because he concluded that he lacked the power to sever claims that had been consolidated.

At the ensuing hearings, claimant, one of the consultants who had previously testified, and Drs. Stoddard and Prendergast appeared. Claimant testified that he was earning $5.98 an hour when he was injured on October 1, 1986, and that he had been working forty hours a week for at least a month before the injury occurred. The consultant was still unable to express an opinion to a reasonable medical probability concerning the cause of the herniated disc. Dr. Stoddard confirmed his previous opinions. In addition, he was asked whether the first injury had caused the second one:

> THE WITNESS: As I've stated, he had a predisposing condition, an ongoing condition for which he had not been released from care, and it was a potential degenerative deteriorating condition, and the October 1 incident brought that all to a head. And, basically, that caused the problem to progress even further when—
>
> MR. BETTINI: Well, you're answering the reverse question, in all honesty, Doctor.

THE WITNESS: Okay.

> Q: (By MR. BETTINI) You're answering the question of the role of the October 1st, '86 accident when you gave that answer and I'm really approaching here the role of the '84 accident. I'm asking whether the '84 accident caused the October 1st, 1986 incident to be an injury?
>
> A. I'd say yes.

Finally, Dr. Prendergast confirmed his previous testimony that both injuries contributed to the herniated disc. He also testified that the first injury had probably caused some degree of herniation and had also caused the second injury to occur:

> Q: In other words, I guess what I'm trying to get at is whatever effect the episode on 10/1/86 had on this man, was it within a reasonable probability because of—in other words, did it have that effect because of the pre-existing condition? Did the second episode happen with a reasonable degree of probability because of the first injury?
>
> A: I think so, yes.

The administrative law judge then issued an award in which he applied the successive injury doctrine and accordingly granted the new injury claim and denied reopening. Regarding the successive injury doctrine and the sufficiency of the evidence to satisfy the legal test for a new injury, he found in relevant part as follows:

> 5. ... The successive injury doctrine is a rule of liability preference, that is, as between two or more potentially liable parties, which party is liable? If there is a bottom line to the successive injury doctrine as it has evolved it may be that the last carrier in the chain is liable for the whole condition, that is, unless there is some circumstance or situation which makes an earlier or different carrier lia-

---

2. Our point was not that claimant's second injury average monthly wage had not yet been formally determined, but that a bare allegation in Fry's brief that claimant was earning less at Fry's than he was earning at Strata was insufficient to establish a reduced average monthly wage because the first injury average monthly wage was the statutory maximum. Indeed, no evidence was presented at the first set of hearings concerning claimant's wage at Fry's.

3. In the motion for reconsideration and the petition for review, claimant argued that a rule of administrative convenience such as the successive injury doctrine could not be constitutionally applied to deny a claimant the more favorable remedy.

ble. *The doctrine is a rule of law, rather than a rule of medicine.*

. . . .

11. Upon a reconsideration of all of the medical and other facts, considered in conjunction with the applicable legal principles, it appears to the undersigned that the right result is to conclude that the applicant sustained a new injury in October, 1986 while working for Fry's ... as a result of handling the bucket. As a result of the earlier injury the applicant had a pre-existing infirmity or weakness or at least partial injury of the disc in question. Physically he was not as whole and sound as an uninjured worker presumably would have been. In the more recent evolution of the successive injury doctrine it seems to have been moving more and more in the direction of a legal principle established long ago in this jurisdiction, namely, that an employer takes the worker as the worker is, and if a further exertion or event causes additional insult or injury then the employer (carrier) is liable for the consequences. The trend of successive injury has been a preference for liability to the last carrier. Thus, the applicant was in a weakened or injured condition, he handled the bucket in a manner which was sufficient to cause the further, more serious injury, eventually necessitating the surgery, and the result is that he sustained a compensable injury, and Fry's Food Store is liable for the consequences.

(Emphasis added.) The administrative law judge also directly addressed claimant's assertion that he had a right to elect reopening despite consolidation if the evidence also satisfied the legal test for reopening:

13. On page 7 of the memorandum decision reference is made to the applicant's suggestion that he could exercise an option about having a reopening or a new claim. In its footnote the court also noted that the undersigned declined to base an award on that theory. The footnote did not seem to preclude the applicant from pursuing this point, and in the 1990 hearings the applicant did offer additional evidence and considerations as revealed by the record. It appears that the

applicant's theory in this respect is that if the earlier injury had a higher average monthly wage and would therefore give him more benefits than the later injury he should be able to choose to receive benefits upon a reopening of the earlier injury rather than being left with merely a new, compensable injury at a lower average monthly wage. Later in the memorandum decision the court commented about the lack of specificity in the record relating to the wage. No doubt with this in mind in the present hearings the applicant stated, and it appeared that the others were in agreement, that the applicant's wage while working for Fry's Food Stores would have been less than the average monthly wage which he had while working for Strata. There could be elsewhere in the law at least a theoretical basis for the applicant being permitted to make a choice when one injury has a higher wage: *Camis v. Industrial Commission,* 4 Ariz.App. 312, 420 P.2d 35 (1966). In this opinion the court stated that where there was an entitlement to compensation under either one of two scheduled injuries, then the applicant would be entitled to the scheduled benefits under the provision that would give the greatest amount of compensation. It is too well known to require citation that the Appellate Court tends to favor a liberal construction, which often means a construction that gives the worker greater benefits rather than fewer benefits. Presumably doing so is one of the underlying purposes of a socially beneficent program such as workers' compensation. However, all of this does not change the role of the Administrative Law Judge, which basically is to apply the law rather than change or ignore it. *The present law of successive injury is based on liability preference. If this were to be changed to a rule whereby the worker could choose which injury he wishes to receive benefits on according to his higher average monthly wage, or if an ALJ could decide successive injury cases by reference to such a rule, this*

*would be a dramatic change in the doctrine.* The undersigned believes that a change of such magnitude is something which would have to come from the legislature or the Appellate Court. *Under the present law applicant is not entitled to choose the claim under which he will receive benefits.*

(Emphasis added.) The administrative law judge affirmed the award on administrative review, and claimant then brought this special action.

## ANALYSIS

On review, claimant asserts that the administrative law judge erroneously denied reopening when the evidence satisfied the legal test for reopening and the average monthly wage for the first claim exceeded the average monthly wage for the second claim. He argues that in such a case, either the successive injury doctrine is inapplicable or its application does not bar reopening for the amount by which the first average monthly wage exceeded the second average monthly wage.

In our opinion, long-standing supreme court authority compels the rejection of both arguments. In *Caganich v. Industrial Commission,* 108 Ariz. 580, 503 P.2d 801 (1972) a butcher injured his left arm in a 1958 industrial injury. Ten years later, while he was working at a reduced average monthly wage, his left arm went limp after he lifted a round of meat. The claimant filed both a petition to reopen the 1958 claim and a new injury claim. The Industrial Commission denied reopening and accepted the new injury claim.

On review, this court set aside the award because the medical expert characterized the second event as an exacerbation of an epicondylitis that was related to the 1958 injury. *See Caganich v. Industrial Comm'n,* 15 Ariz.App. 594, 595–96, 490 P.2d 39, 40–41 (1971). Our supreme court vacated this opinion and affirmed the award. It concluded that the sudden change in arm function that was related to the 1968 lifting incident satisfied the legal definition of a new injury. *See Caganich,* 108 Ariz. at 581, 503 P.2d at 802. Distin-

guishing medical from legal causation, the court explained that the medical characterization of a condition is not dispositive. *See id.* at 581–82, 503 P.2d at 802–03. It instead applied the principle that the employer takes the employee as he is, stating that: *"[i]n legal contemplation, if an injury, operating on an existing bodily condition or predisposition, produces a further injurious result, that result is caused by the injury."* *Id.* at 582, 503 P.2d at 803 (emphasis in original). Thus, despite the reduced average monthly wage, the supreme court affirmed the acceptance of the new injury claim and the denial of reopening.

■ The successive injury doctrine is simply an application of the principle that the employer takes the employee as he or she is in cases of consolidated reopening and new injury claims. *See, e.g., Pearce Dev. v. Industrial Comm'n,* 147 Ariz. 598, 602, 712 P.2d 445, 449 (App.), *analysis of successive injury doctrine approved,* 147 Ariz. 582, 712 P.2d 429 (1985). This court has distinguished *Caganich* in cases in which a claimant has only petitioned to reopen. This option initially extended only to cases in which the prior injury caused the subsequent injurious activity. *See Pearce,* 147 Ariz. at 601–03, 712 P.2d at 448–50. The representative case involved a claimant who worked in a stooped position because of a prior knee injury and as a result gradually developed a back injury. *See O'Donnell v. Industrial Comm'n,* 125 Ariz. 358, 609 P.2d 1058 (App.1980). Subsequent cases, however, have not limited the option to reopen to cases of strong causation. Rather, a claimant may reopen in any case that satisfies the legal test for reopening by simply electing not to pursue a new injury claim. *See Dr. Pepper Co. v. Industrial Comm'n,* 154 Ariz. 563, 744 P.2d 475 (App.1987); *Mercante v. Industrial Comm'n,* 153 Ariz. 261, 735 P.2d 1384 (App.1987).

■ But under *Caganich,* if a claimant pursues both a petition to reopen and a new injury claim, the successive injury doctrine is the rule of decision. This court must follow supreme court authority. *See,*

*e.g., McKay v. Industrial Comm'n,* 103 Ariz. 191, 438 P.2d 757 (1968). In the current case, claimant filed both a petition to reopen and a new injury claim. The administrative law judge's application of the successive injury doctrine was therefore correct.

Although we conclude that *Caganich* is dispositive, we also address claimant's contention that the application of the successive injury doctrine deprived him of benefits to which he was otherwise entitled. To the extent that the first injury caused a reduction in earning capacity, claimant always had a remedy by reopening that was wholly severable from the remedy for the new condition that developed in October of 1986. If claimant believed that the first injury had disabled him from performing construction work, he could have sought to reopen before the second injury occurred. This would have afforded him the opportunity to establish his entitlement to benefits for a permanent impairment and partial disability attributable to the first injury. *See, e.g., Morrison–Knudsen Co. v. Industrial Comm'n,* 27 Ariz.App. 1, 3, 550 P.2d 648, 650 (1976), *vacated on other grounds,* 115 Ariz. 492, 566 P.2d 293 (1977). We express no opinion, however, whether reopening remains available now that claimant has unsuccessfully petitioned to reopen without having asserted this independent basis for reopening.

For the foregoing reasons, the award is affirmed.

McGREGOR, P.J., and LANKFORD, J., concur.