928 P.2d 687

**A.J. GOULDER ELECTRIC, Petitioner Employer,**

**Fremont Compensation Insurance Company, Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**George I. Holmes, Respondent Employee,**

**Atlantic Group, Respondent Employer,**

**CNA Insurance Company, Respondent Carrier.**

**No. 1 CA–IC 94–0078.**

Court of Appeals of Arizona, Division 1, Department C.

June 4, 1996.

Review Denied Dec. 17, 1996.

Jones, Skelton & Hochuli by Calvin Harris, Phoenix, for Petitioners Employer and Carrier.

Anita R. Valainis, Chief Counsel, Industrial Commission of Arizona, Phoenix, for Respondent.

Law Office of John F. Day, P.C. by John F. Day, Scottsdale, for Respondent Employee.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by J. Victor Stoffa, Christopher Robbins, Phoenix, for Respondents Employer and Carrier.

## OPINION

FIDEL, Judge.

In the course of consolidated Industrial Commission hearings on a new injury claim and petition to reopen a closed earlier claim, Claimant and the new injury carrier reached a settlement, which the reopening carrier declined to join. At the request of the settling parties, but over the objection of the reopening carrier, the administrative law judge ("ALJ") approved the settlement and dismissed both the Claimant's protest of termination of the new injury claim *and* his protest of denial of reopening of the prior injury claim. Although denial of reopening would thereby become final, the reopening carrier nonetheless objects. The reopening carrier is aggrieved, it maintains, because dismissal of the consolidated underlying proceedings frustrates its opportunity to invoke the successive injury doctrine and shift responsibility to the new injury carrier.

The question presented on review is whether, under the circumstances, the reopening carrier's consent was necessary to the other parties' settlement and to dismissal of the consolidated hearing. For the reasons that follow, we hold that it was not.

### I.

In November 1987, while working as an electrician for the Petitioner Employer

("Goulder"), Claimant injured his lower back. Petitioner Carrier ("Fremont") accepted this first injury claim, and the Commission established an average monthly wage of $1,325.00, then the statutory maximum. *See* Ariz.Rev. Stat. Ann. ("A.R.S.") § 23–1041(E)(1). In August 1988, Claimant had a lumbar discectomy at L4–5 to treat the first injury. Although he later returned to work as an electrician, he required active medical care until September 1991. Fremont then terminated the first injury claim with a 10% permanent impairment, the Commission found no loss of earning capacity, Claimant did not object, and the "no-loss" determination became final. *See* A.R.S. § 23–947.

In October 1992, while working as an electrician for Respondent Employer ("Atlantic"), Claimant reinjured his lower back. Respondent Carrier ("CNA") accepted this second injury claim, and the Commission established an average monthly wage of $2,100.00, the higher statutory maximum effective by that date. *See* A.R.S. § 23–1041(E)(4). In January 1993, CNA terminated the second injury claim without permanent impairment, and Claimant requested a hearing.

Thereafter, in short order, Claimant petitioned to reopen the first injury claim, Fremont denied reopening, Claimant requested a hearing, and, upon Claimant's request, the ALJ consolidated the two claims.

At the initial consolidated hearing, Claimant was the single witness. Claimant testified that, despite some ongoing symptoms, he had worked regularly as an electrician after the first injury and surgery; that his symptoms had significantly worsened after the second injury; that he was limited to lighter work; and that he had experienced resulting episodic unemployment. Claimant also testified that his current treating physicians had recommended a spinal fusion, which he would undergo if coverage with either carrier were confirmed.

At the close of the first hearing, further hearings were intended. Before the next scheduled hearing, however, Claimant's counsel informed the ALJ that Claimant and CNA had settled their dispute and that Fremont, the reopening carrier, would not agree.

Claimant's attorney requested a conference to determine "whether or not the Administrative Law Judge can and will allow the applicant to withdraw his request for hearing against CNA and proceed unilaterally against Fremont."

There is no written record of such a conference. The parties represent, however, that such a conference was conducted. And Fremont represents without contradiction that it objected to approval of the settlement agreement; contends that, in these consolidated proceedings, Fremont and Goulder were "real-parties-in-interest" to the new injury claim; and maintains that neither claim could be compromised without its consent.

The ALJ issued no immediate post-conference rulings. Thereafter, however, CNA moved to sever the new injury and reopening claims, and Claimant submitted an executed agreement to the ALJ for approval. In the agreement, the parties acknowledged medical conflict over the question whether the second injury had temporarily or permanently aggravated Claimant's preexisting lower back condition; Claimant did not oppose CNA's position that the effect of the second injury was temporary and that any present or future symptoms were unrelated to the second injury; and CNA agreed to pay Claimant $42,500.00. The agreement further provided that, if the ALJ approved the settlement, Claimant would withdraw his protest of CNA's termination of the second injury claim *and* his protest of Fremont's denial of reopening of the first injury claim. Finally, the Claimant and CNA recognized within the agreement that it would "not have binding effect on any person or persons not a signatory hereto."

On December 22, 1993, the ALJ issued a consolidated award approving the compromise and settlement agreement and dismissing both hearing requests. The award did not address CNA's motion to sever or Fremont's argument that the ALJ could not approve the settlement agreement without Fremont's consent. Fremont timely requested administrative review. In a response adopted by Claimant, CNA again moved to sever the two claims. A substitute ALJ is-

sued a consolidated decision summarily affirming the award without addressing the motion to sever. Fremont filed a timely special action petition in this court.

## II.

The successive injury doctrine drives this dispute. Only in considering that doctrine can one examine Fremont's motivation to appeal from the Commission's dismissal of the Claimant's protest of Fremont's denial of reopening.

 The successive injury doctrine, a rule of liability preference, attributes unapportioned liability to the last responsible injury. *E.g., Pearce Dev. v. Industrial Comm'n*, 147 Ariz. 598, 602, 712 P.2d 445, 449 (App.1985), *approved in pertinent part*, 147 Ariz. 582, 582, 712 P.2d 429, 429 (1985). The doctrine applies, however, only when a claimant has elected to file more than one claim; it does not establish a new injury defense when a claimant has filed solely a petition to reopen. *See, e.g., id.* at 602, 712 P.2d at 449; *see also, e.g., Dr. Pepper Co. v. Industrial Comm'n*, 154 Ariz. 563, 566–67, 744 P.2d 475, 478–79 (App.1987).

In *O'Donnell v. Industrial Comm'n*, 125 Ariz. 358, 362, 609 P.2d 1058, 1062 (App. 1979), this court expressly conditioned the successive injury doctrine upon a claimant's election. Later, in *Pearce*, we reiterated the point:

> *O'Donnell* merely creates an exclusive option. The claimant may choose to petition to reopen or file a new injury claim, or both. The facts may support one or the other remedy or both. If the facts support both remedies, *the claimant alone has the option* of selecting between them. However, the claimant cannot collect benefits from both carriers for the same injury.

147 Ariz. at 603, 712 P.2d at 450 (emphasis added). The supreme court "approved and adopted" our analysis. *Pearce*, 147 Ariz. at 583, 712 P.2d at 430.

The dependency of the successive injury doctrine on Claimant's election makes Fremont's motivation plain: Fremont seeks to keep the underlying consolidated proceeding alive in order to shift liability, through the successive injury doctrine, to CNA. By acceding to dismissal of the consolidated proceeding, Fremont would achieve finality for its determination by notice of claim status that Claimant has no current condition that warrants reopening the Fremont claim. If, however, Claimant should file a later petition to reopen against Fremont, Fremont would lack the opportunity to invoke the successive injury doctrine against CNA.

Against this backdrop, we examine whether the ALJ had authority to dismiss the new injury and reopening claims without Fremont's consent.

### A.

 A.R.S. subsection 23–941(C) provides that an ALJ may dismiss a hearing request "when it appears to his satisfaction that the disputed issue or issues have been resolved by the parties." Pursuant to this statute, Fremont argues that it may block dismissal of the underlying hearing because the successive injury issue remains unresolved. In support of this argument, Fremont cites *Marriott Corp. v. Industrial Comm'n*, 156 Ariz. 78, 750 P.2d 21 (1988).

In *Marriott*, a self-insured employer recommended an average monthly wage, the Commission adopted it, and the claimant filed a timely hearing request. As the hearing date approached, the employer concluded that its original wage recommendation was too high, informed the ALJ, and filed an untimely request for hearing. The claimant responded by attempting to withdraw her hearing request, the ALJ dismissed the hearing, and this court affirmed the award. 156 Ariz. at 79–80, 750 P.2d at 22–23. The supreme court reinstated the hearing, however, explaining:

> Under [A.R.S. § 23–941(C)], so long as one party demonstrates that there remains a disputed unresolved issue, then the ALJ may not dismiss a request for hearing. The statute does not require the protesting party to exercise due diligence in uncovering a disputed issue or issues.... As a matter of policy, as well as statutory construction, we believe that any party may rely upon the hearing request filed by

another party. So long as unresolved issues exist, and are known to the parties and the ALJ, dismissal is inappropriate under A.R.S. § 23–941(C).

*Id.* at 81, 750 P.2d at 23.

Although Fremont contends that *Marriott* governs this case, the cases differ significantly. *Marriott* involved a single claim, not consolidated claims, and an unresolved dispute over an issue—average monthly wage—intrinsic to that claim. To squarely compare this case, we must isolate Claimant's single reopening claim against Fremont. The dismissal of that claim would not leave unresolved a single issue intrinsic to the Fremont/Claimant dispute. Rather, by moving to dismiss his request for hearing, Claimant accedes to Fremont's position that he lacks any condition warranting reopening of the Fremont claim.

What complicates this case, of course, and further distinguishes *Marriott*, is the element of consolidation. If this were only a reopening claim, *Marriott* would pose no bar to its dismissal. The unresolved issue that Fremont complains of—applicability of the successive injury doctrine—is not intrinsic to the reopening claim but rather to its consolidation with a new injury claim. Fremont is therefore mistaken in arguing that *Marriott* governs this case. The question is rather whether *Marriott* should be expanded to apply.

### B.

To answer that question, Fremont cites *Associated Grocers v. Industrial Comm'n* for the proposition that consolidation has bound the once separate Fremont and CNA claims into "a single cause, and [made] those who are parties to one claim parties to the other." 126 Ariz. 412, 414, 616 P.2d 87, 89 (App.1980).

In *Associated Grocers,* as in this case, the claimant filed both a petition to reopen and a new injury claim to determine liability for a single condition. After consolidated hearings, the Commission issued a consolidated award granting the new injury claim and denying reopening of the prior claim. The self-insured employer responsible for the new injury claim sought review in this court,

but failed to join the reopening carrier. Upon claimant's motion, this court dismissed the petition for failure to join an indispensable party. Examining IC Rule 50, A.A.C. R20–5–150 (Supp.95–1), the source of the ALJ's authority to "consolidate" such claims, we stated:

Rule 50 speaks not of "consolidation", but of "joinder" and in this respect is similar to Rule 19(a) ... and Rule 20(a) ... of the Arizona Rules of Civil Procedure. It is clear that the effect of "joinder" under these Rules ... is to make the separate claims a single cause, and to make those who are parties to one claim parties to the other claim. Analytically, ... *true joinder* is particularly appropriate in the circumstances presented in the case before us because the claimant has but one present physical condition....

*Id.* (citations omitted).

We further explained our ruling by examining the consequence for the reopening carrier, who had not been made a party to the appeal, if the new injury carrier could proceed alone with an effort to set the award aside:

More importantly, an adjudication of the joined claims results in a single award from which review must be taken. The "single award" concept is of crucial importance in Workmen's Compensation reviews as this court is strictly limited to either affirming an award of the Industrial Commission or setting it aside.... To set aside the consolidated award in this case, joined under Rule 50, would necessarily reexpose [the reopening carrier] to potential liability on a hearing *de novo* regarding the reopening claim. [The reopening carrier], therefore, falls within the classic definition of an indispensable party.

*Id.* (citations omitted).

Under *Associated Grocers,* according to Fremont, we may not analyze the underlying proceeding (as in the preceding section of this opinion) as a Claimant/Fremont contest coupled with a Claimant/CNA contest; it was rather a Claimant/Fremont/CNA contest in which Fremont could block any dismissal that did not resolve a disputed issue between itself and CNA.

As with *Marriott*, however, there are significant differences between *Associated Grocers* and this case. Here, the parties had not proceeded to adjudication; there the parties had litigated and the Commission had adjudicated the merits of both claims. There, precisely because the matter had proceeded to adjudication, we could describe the single award concept as "of critical importance." *Id.* (The reopening carrier, victorious in the adjudication, would have lost its victory and been forced to a new hearing had the new injury carrier succeeded in its absence in setting the award aside.) Here, by contrast, with the pre-adjudication dismissal of the claims, the single award concept has no importance at all.

Additionally, the successive injury doctrine has evolved significantly since *Associated Grocers*. Before *O'Donnell*, a claimant was obliged to file a new injury claim when a successive injury contributed to a compensable condition, even if the condition could be linked by expert testimony to a reopenable prior claim. *See Sun Control Tile Co. v. Industrial Comm'n*, 117 Ariz. 268, 269–70, 571 P.2d 1064, 1065–66 (App.1977).

■ In *O'Donnell*, however, as we have indicated, this court rejected the new injury defense to a petition to reopen and concluded that "the claimant alone has the option of selecting" whether "to petition to reopen or file a new injury claim, or both." *Pearce*, 147 Ariz. at 603, 712 P.2d at 450, *analysis approved*, 147 Ariz. 582, 712 P.2d 429. This election extends to all cases of joint causation. *Espinosa v. Industrial Comm'n*, 170 Ariz. 354, 359, 824 P.2d 750, 754 (App.1991). Only when a claimant elects to submit both claims for a decision on their merits does the successive injury doctrine come into play. *Id.* at 359–60, 824 P.2d at 754–55.

In light of these differences, we disagree that *Associated Grocers* controls.

### C.

We come then to the question whether *Marriott* and *Associated Grocers* should be extended to the circumstances of this case. That question, in turn, presents another that the Industrial Commission chose not to address. CNA twice moved to sever the consolidated claims; Claimant joined the second motion; both times the ALJ chose not to rule. If these claims had been severed, Fremont would have lacked any basis to assert the status of a party to the CNA new-injury claim or any standing to object to its settlement or dismissal. Likewise, if these claims had been severed, Fremont would have lacked any ground to challenge Claimant's withdrawal of its request for hearing on reopening—effectively an accession to Fremont's denial of reopening. Fremont's argument therefore assumes that the ALJ could not have granted a severance—that new injury and reopening claims, once joined, could not be severed without every party's consent.

If our workers' compensation jurisprudence made joinder necessary for a just adjudication, we would accept this assumption. Similarly, if the rules of the Industrial Commission permitted an employer or carrier responsible for a prior injury to "implead" one responsible for a later injury, we would accept this assumption. *O'Donnell* and *Pearce*, however, have made joinder elective at the sole option of the claimant and abolished the new injury defense.

■ This is not, therefore, a question of indispensable parties to a just adjudication. It is merely a question whether a claimant, having initiated consolidated claims, is bound by his election, or retains the option, before a ruling on the merits, to restore the litigation to a posture he might have chosen at the start. A claimant is understandably bound by his election after joined claims have been litigated and determined on the merits. *See Espinosa*, 170 Ariz. at 359–60, 824 P.2d at 754–55. This case, however, presents the very different question whether joined claims may be severed to permit settlement before the merits have been reached.

Arizona jurisprudence has evolved in favor of workers' compensation settlements in recent years. In *Arizona Public Service Co. v. Industrial Comm'n*, we stated:

> We do not intend to disturb the practice of negotiating settlements of disputed claims, and then withdrawing the request for hearing. In the event of a settlement,

A.R.S. § 23–941(C) authorizes the administrative law judge to dismiss the request for hearing, even without a formal withdrawal. Nor do we intend to prohibit a claimant who, for any reason, chooses to withdraw his request for hearing and not pursue his claim even though he may not agree with the carrier's position, from doing so. *Under such circumstances, when the carrier and the claimant concur in, or the claimant accedes to, the carrier's determination, we see nothing improper in entering an award dismissing the request for hearing.* 133 Ariz. 358, 362, 651 P.2d 886, 890 (App. 1982) (citations omitted) (emphasis added). And in *Safeway Stores v. Industrial Comm'n,* our supreme court stated:

> Although the workers' compensation system differs in important respects from traditional tort law, the effectiveness of settlement in the tort system attests to the ability of parties to accurately assess their own needs. Furthermore, settlement agreements avoid the long and expensive litigation that often accompanies workers' compensation hearings.

152 Ariz. 42, 47–48, 730 P.2d 219, 224–25 (1986).

In this case, as in *Safeway,* settlement approval "avoid[s] the long and expensive litigation that often accompanies workers' compensation hearings." *Id.* Indeed, this factor carries extra force in successive injury cases, which are particularly apt to be long and expensive, given the number of parties involved and the complex causation disputes that frequently arise.

To accomplish the settlement in this case, one "carrier and the claimant concur[red] in ... [that] carrier's determination," and "the claimant accede[d] to [ ] the [other] carrier's determination." *See Arizona Public Service,* 133 Ariz. at 362, 651 P.2d at 890. And the procedural effect of the settlement was merely to return the litigation to the stage when both carriers had issued notices of claim status, as if Claimant had never requested a hearing at all.

In summary, three factors combine to support the award of the Industrial Commission: (1) the dependence of successive injury cases on Claimant's election; (2) a well-established policy encouraging the settlement of workers' compensation claims; and (3) the particulars of this settlement, by which Claimant accedes to the notices of claim status of each carrier. We therefore conclude that the ALJ properly approved the settlement in this case and properly dismissed Claimant's requests for hearing on both the new injury and reopening claims.

For the foregoing reasons, the award of the Industrial Commission is affirmed.

VOSS, P.J., and TOCI, J., concur.