993 P.2d 1098

**FRITO LAY, Petitioner Employer,**

**CNA Risk Management, Petitioner Carrier,**

v.

**INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Constitution State Service Company, Respondent Carrier,**

**Wayne Morgan, Respondent Employee.**

**No. 1 CA–IC 99–0012.**

Court of Appeals of Arizona, Division 1, Department C.

July 6, 1999.

Jones, Skelton & Hochuli by Gregory L. Folger and K. Casey Kurth, Phoenix, Attorneys for Petitioners Employer and Carrier.

Anita R. Valainis, Chief Counsel, The Industrial Commission of Arizona, Phoenix, Attorney for Respondent.

Kathleen L. Hoskins, Phoenix, Attorney for Respondent Carrier.

## OPINION

EHRLICH, Judge.

¶1 This is a special action review of an Arizona Industrial Commission Award and Decision Upon Review for temporary disability benefits and a compensable claim. On appeal, CNA Risk Management presents two issues:

(1) Whether sufficient medical evidence supports the finding of the administrative law judge ("ALJ") that Wayne Morgan sustained a new injury on April 26, 1998; and

(2) Whether the ALJ erred by applying the successive injury doctrine when Morgan's first injury had not become stationary as of the date of the alleged new injury.

Because the record contains sufficient medical evidence to support the ALJ's finding that Morgan sustained a new compensable injury on April 26, 1998, and CNA has cited no authority precluding the application of the successive injury doctrine, we affirm.[1]

### DISCUSSION

 ¶2 CNA first argues that the record contains insufficient evidence to support a finding that Morgan sustained a new compensable injury on April 26, 1998. It claims that there is no objective evidence that the incident on that date produced any further injurious result. We disagree.

¶3 On October 7, 1996, Morgan sustained a compensable industrial injury to his lower back when he slipped and fell, landing on his tailbone. He was unable to work for eight months.

¶4 Morgan returned to his regular work as a Frito Lay route salesman in May 1997, and he continued to perform that work until

the April 26, 1998 incident. Morgan later stated that, after the 1996 injury, his low-back symptoms never completely resolved, but he was able to work.

¶5 On April 26, 1998, when Morgan twisted to put a box down, his left leg gave way, causing him to fall forward on his hands and knees. Morgan said that his left leg went completely numb, and that, shortly thereafter, he developed greater back pain than he ever had experienced before. Since then, his back symptoms are worse. He has more difficulty with his left leg buckling, and he has been unable to return to work.

¶6 Although no medical testimony was presented at the Commission hearing, medical records are part of the Commission file. These include the September 29, 1998, report of Wesley Johnson, M.D. That report states in part:

> After review of the patient's exam, his scans, and his history, it appears to me that the patient may have a neuroradicular source and clearly has 2–3 things structurally that could be pain generators. Due to his relatively normal functional status prior to this injury, *I believe his most recent injury to be the major contributing cause for his ongoing need for medical care despite consideration of his prior injuries and their implications historically.* I believe the patient, at the present time, has one of three things going on. First, he has some evidence of spondylolysis at L5 which may be causing some of his back pain. Likewise, the neural foraminal stenosis at L5–S1 is very significant and severe, and I would suspect it is causing him some neuroradicular symptoms. Beyond this, the L3–4 disk on the left side that I can see on his MRI scan is fairly prominent. This likewise could be a problem.

(Emphasis added.)

¶7 The May 21, 1998, MRI scan report of Dr. Catania states:

---

1. CNA also argues an issue raised below of its standing to file this petition for special action. Although it did not participate in the Commission hearing, Arizona Revised Statutes Annotated section 23–951(A) provides that "[a]ny party affected by an award by the commission or by a decision upon review" may apply to this court by a petition for special action "to review the lawfulness of the award, order, or decision upon

review." *See* Ariz. R.P. Special Actions 10. The parties typically include the claimant, the employer and the employer's insurance carrier, and we have held that the failure of an employer and carrier to be present at a Commission hearing did not preclude them from asserting defenses on appeal. *See Bishop v. Industrial Comm'n,* 17 Ariz.App. 42, 44, 495 P.2d 482, 484 (1972).

**IMPRESSION:**

1. L3–4 degenerative disc disease, diffuse circumferential disc bulge, and mild right facet joint arthropathy.
2. L4–5 degenerative disc disease, diffuse posterior disc bulge, and mild bilateral facet joint arthropathy.
3. Bilateral L5 spondylolysis with mild (grade I) L5–S1 spondylolisthesis.
4. L5–S1 degenerative disc disease, diffuse circumferential disc protrusion, and severe bilateral neural foramen stenosis (left worse than right) apparently impinging upon both exiting L5 nerve roots.
5. No tumor is identified.
6. Clinical correlation is essential.
7. Surgical consultation is advised.

¶ 8 The testimony of Morgan and report of Dr. Johnson are consistent and supported by the objective changes on the May 21, 1998, MRI scan, which, for the first time, indicated that Morgan had a protruding disk at L5–S1 impinging upon both of his exiting L5 nerve roots. This new evidence of an objective change supports the ALJ's finding that Morgan sustained a new compensable injury on April 26, 1998.

¶ 9 CNA next contends that the ALJ erred by applying the successive injury doctrine. It stresses that Morgan's first injury claim was not closed at the time of the April 26, 1998, incident.

¶ 10 The successive injury doctrine is a rule of liability preference: As between two or more potentially liable parties, the last in the chain is liable for the whole injury. *Pearce Dev. v. Industrial Comm'n,* 147 Ariz. 598, 602, 712 P.2d 445, 449 (App.1985), approved in part, 147 Ariz. 582, 712 P.2d 429 (1985). The justification for this nonapportionment is pragmatic:

> Apportionment ... would be the ideal theory in a perfect world, i.e., a world in which all previous insurers were within the jurisdiction of the board, and the proportional disability which occurred when each was at risk could be easily measured. Obviously, however, this is not a perfect world....

> [A]ssigning liability to the employer on risk at the time of the last injury is easier to administer than the apportionment solution and, in most instances, will provide the highest level of benefits for the claimant.

9 Arthur Larson and Lex K. Larson, LARSON'S WORKERS' COMPENSATION LAW § 95.12 at 17–155 to –157 (1998)(footnotes omitted).

¶ 11 Thus, the successive injury doctrine permits but does not require a claimant with potential reopening and new injury claims to file multiple claims. *See, e.g., A.J. Goulder Elec. v. Industrial Comm'n,* 187 Ariz. 263, 266, 928 P.2d 687, 690 (App.1996). Under the successive injury doctrine, if a claimant elects to file multiple claims, litigates them and satisfies the burden of proof as to more than one claim, then the claim that is last in time becomes the one wholly subject for workers' compensation benefits. *Vishinskas v. Industrial Comm'n,* 147 Ariz. 574, 577–78, 711 P.2d 1247, 1250–51 (App.1985).

¶ 12 CNA has provided no authority in support of its argument that the successive injury doctrine cannot be applied when the original injury claim remains open, rather than requiring reopening, and we believe that the ALJ practically and correctly applied the successive injury doctrine. Morgan had returned to his regular work and performed that work without incident for almost a year before the April 26, 1998, incident. On that date, a distinct new episode occurred with different and worsened symptoms supported by an objective change on the MRI scan.

¶ 13 For the foregoing reasons, we affirm the award.

CONCURRING: SHELDON H. WEISBERG, Presiding Judge, and JEFFERSON L. LANKFORD, Judge.